ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| LUZ MERCEDES CRESPO TORRES Y OTROS<br><br>Parte Apelante<br><br>v.<br><br>SUPERMERCADO MR. SPECIAL, INC. Y OTROS<br><br>Parte Apelada | TA2025AP00573 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Utuado<br><br>Caso Núm.: SJ2020CV03069<br><br>Sala: 101<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de febrero de 2026.

Compareció ante este Tribunal la parte apelante, la Sra. Luz Mercedes Crespo Torres (en adelante, la "señora Crespo Torres") y el Sr. Ismael Díaz González (en adelante, el "señor Díaz González") (en adelante y en conjunto, los "Apelantes"), mediante recurso de apelación presentado el 20 de noviembre de 2025. Nos solicitaron la revocación de la *Sentencia Enmendada* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de Utuado (en adelante, el "TPI"), el 21 de octubre de 2025. A través del referido dictamen, el TPI declaró "Ha Lugar" la "**Demanda**" presentada por los Apelantes.

Por los fundamentos que expondremos a continuación, se *modifica* la *Sentencia* apelada y así modificada*, se confirma.*

**I.**

Los hechos del presente caso se originaron el 5 de junio de 2020, con la presentación de una "**Demanda**" por parte de los Apelantes en contra de Supermercados Mr. Special, Inc. (en adelante, "Mr. Special"), Chubb Insurance Company of Puerto Rico (en adelante, "Chubb") y otros codemandados de nombres desconocidos (en adelante y en conjunto, los

"Apelados"). Mediante la misma, expresaron que el 16 de noviembre de 2018, alrededor de las 10:00 a.m., la señora Crespo Torres acudió al supermercado Mr. Special del Municipio de Lares. Adujeron que, mientras caminaba empujando su carrito de compras, la señora Crespo Torres sufrió un resbalón debido a que el piso se encontraba mojado. Indicaron que la caída provocó que la señora Crespo Torres quedara en posición de "split", impactándose la rodilla izquierda y experimentando un dolor agudo tan severo que perdió control de sus funciones corporales.

Expusieron que la señora Crespo Torres tuvo que ser levantada del suelo por un guardia de seguridad y un cliente que se encontraba comprando. Señalaron que, debido al dolor, la señora Crespo Torres esperó hasta que su hijo, el Sr. Xavier Díaz Crespo (en adelante, el "señor Díaz Crespo"), y el señor Díaz González llegaran al lugar. Afirmaron que el señor Díaz Crespo la asistió en completar el formulario de reclamación provisto por el supermercado.

Manifestaron que el señor Díaz González trasladó a la señora Crespo Torres al *Lares Medical Center*, donde recibió tratamiento inicial. Alegaron que, el 28 de noviembre de 2018, se le realizó una tomografía computarizada de la columna lumbar y la rodilla izquierda, y que al día siguiente fue evaluada por su médico primario, el Dr. Planell, quien observó edema, rigidez, dolor en el rango de movimiento y discapacidad para ambular. Relataron que, el 14 de enero de 2019, la señora Crespo Torres fue reevaluada por el Dr. Planell, quien nuevamente constató inflamación y limitaciones funcionales. Indicaron que ese mismo día la señora Crespo Torres acudió al ortopeda Dr. Báez y que dicho especialista observó dolor severo descrito como "10/10", hinchazón y debilidad en la rodilla izquierda. Expusieron que el Dr. Báez administró una inyección y recomendó una cirugía artroscópica.

De igual modo, afirmaron que la artroscopía fue realizada el 20 de junio de 2019, luego de que el señor Díaz González fuera sometido a una cirugía de cáncer en abril de ese año, lo cual atrasó el procedimiento. Explicaron que durante la operación se realizó una meniscectomía medial y

lateral, una sinovectomía parcial y una condroplastía. Añadieron que, el 8 de julio de 2019, la señora Crespo Torres comenzó terapias físicas, culminando el 7 de agosto de 2019, tras completar diez (10) sesiones. Sostuvieron que, a pesar del tratamiento, la señora Crespo Torres continuó experimentando dolor, rigidez, hinchazón y adormecimiento.

Señalaron que, el 15 de agosto de 2019, la señora Crespo Torres fue nuevamente evaluada por el Dr. Planell, quien documentó ausencia de mejoría y persistencia de dificultad para ambular. Alegaron que, posteriormente, el Dr. Báez volvió a evaluar a la señora Crespo Torres y recomendó un reemplazo total de rodilla. Detallaron que la cirugía se realizó el 10 de octubre de 2019 e incluyó un autoinjerto óseo, liberación retinacular rotuliana lateral y artroplastía total.

Manifestaron que el Dr. Báez recomendó terapia física, uso de andador y manejo de carga parcial. Expusieron que, el 14 de octubre de 2019, la señora Crespo Torres fue admitida en el Hospital Bella Vista de Mayagüez, donde recibió terapias físicas y ocupacionales hasta el 23 de octubre de 2019, completando siete (7) sesiones de cada una. Indicaron que, ese mismo día, el Dr. Báez observó dolor moderado, hinchazón y limitación en el rango de movimiento, recomendando terapias adicionales, el uso de un bastón y tratamiento mediante máquina CPM.

Asimismo, informaron que, el 24 de octubre de 2019, la señora Crespo Torres reanudó terapias físicas, culminando el 7 de noviembre de 2019, tras completar ocho sesiones adicionales. Expresaron que, el 2 de marzo de 2020, la señora Crespo Torres fue sometida a un examen médico independiente realizado por el Dr. Cortés Santos. Alegaron que, a través de dicho informe, fechado el 19 de marzo de 2020, se concluyó que la señora Crespo Torres presenta una incapacidad permanente del diecisiete por ciento (17%) y que ha alcanzado su máxima mejoría médica, sin probabilidad razonable de mejoría adicional en los siguientes doce (12) meses. Por último, alegaron que la caída sufrida por la señora Crespo Torres fue causada por la negligencia de los empleados, oficiales o contratistas de Mr. Special.

En vista de lo anterior, le solicitaron al TPI que ordenara a los Apelados a compensar a la señora Crespo Torres por los daños físicos y morales que alegadamente sufrió, ascendentes a ciento sesenta mil dólares ($160,000.00), así como el pago de treinta mil dólares ($30,000.00) por los daños morales reclamados por el señor Díaz González.

Posteriormente, el 29 de julio de 2020, Mr. Special y Chubb presentaron su "**Contestación a la Demanda**", en la cual negaron la mayoría de las alegaciones expuestas en su contra y expresaron que la condición del piso mojado no fue creada por ellos ni era de su conocimiento, por lo que no debían responder por los daños reclamados. Además, enfatizaron que Mr. Special siempre opera su negocio con la diligencia de un comerciante prudente y razonable. A tono con lo anterior, solicitaron la desestimación de la "**Demanda**" presentada en su contra. Más adelante, el 13 de octubre de 2020, dicho escrito fue enmendado, a los fines de corregir la defensa número (1) uno y precisar que, al momento de los hechos, la tienda había colocado un rótulo advirtiendo que el piso estaba mojado.

Tras múltiples trámites procesales impertinentes a la controversia de autos, el juicio en su fondo se celebró los días 16 y 22 de agosto de 2024, así como el 2, 5, 9 y 12 de diciembre de 2024. Evaluada la prueba presentada, el 30 de junio de 2025, el TPI dictó *Sentencia* declarando "Ha Lugar" la "**Demanda**" y condenando solidariamente a los Apelados al pago de treinta y siete mil quinientos dólares ($37,500.00) a favor de la señora Crespo Torres por daños directos y/o morales, y de dos mil ochocientos ocho dólares con veintiún centavos ($2,808.21) al señor Díaz González por sus angustias, ambas sumas devengando intereses legales de 8.75%.

Inconforme con lo anteriormente resuelto, el 17 de julio de 2025, los Apelantes presentaron una "**Moción Solicitando Determinación de Hechos Adicionales y Reconsideración**". A través de ésta, señalaron que la *Sentencia* omitió realizar determinaciones respecto al informe del incidente, al informe de la guardia de seguridad y al informe del gerente, documentos que, según alegaron, establecen que el piso estaba mojado al momento del accidente y que no se consignó la presencia de un cono de

advertencia. Asimismo, destacaron que, aunque la guardia de seguridad incluyó detalles sobre el calzado de la señora Crespo Torres, no mencionó la existencia de un cono de advertencia. Argumentó que el gerente ofreció una versión distinta en el juicio, lo cual no encuentra respaldo en los informes preparados el día de los hechos. Indicaron también que la determinación de hechos número treinta y cuatro (34), basada en el testimonio del gerente, sostiene que éste ayudó a levantar a la señora Crespo Torres, lo cual no surge de ninguno de los informes estipulados ni del informe de la propia señora Crespo Torres.

Añadieron que la *Sentencia* tampoco contiene una determinación sobre el número de días que la señora Crespo Torres estuvo hospitalizada. Asimismo, alegaron que el perito, Dr. Cortés, explicó que el porcentaje de incapacidad asignado ya incluía un *apportionment* para considerar las condiciones preexistentes de la señora Crespo Torres, por lo que el avalúo efectuado por el Tribunal tendría el efecto de penalizarla doblemente, sin justificación. Arguyeron, además, que resultaba cuestionable que el gerente relatara hechos no consignados en su propio informe alegadamente preparado el día del incidente.

En armonía con lo anterior, solicitaron la reconsideración de: (1) las determinaciones de hechos 27, 28, 29 y 30 y (2) la credibilidad atribuida al gerente. Igualmente, solicitaron la revisión de la cuantía adjudicada a la luz de la jurisprudencia aplicable, incluyendo Gerald Brum Arrieta v. First Bank, caso núm. KLAN201600213, Colón y otros v. K-mart y Otros, 154 DPR 510 (2001) y Natividad Soto Santiago v. Doe, caso núm. KLAN201901225.

En concordancia con dicha solicitud, el 21 de octubre de 2025, el foro de instancia emitió una *Sentencia Enmendada* mediante la cual impuso a Mr. Special y a Chubb la obligación de pagar solidariamente la suma de cincuenta mil dólares ($50,000.00) a la señora Crespo Torres, por concepto de daños directos y/o morales, así como dos mil ochocientos ocho dólares con veintiún centavos ($2,808.21) al señor Díaz González por sus angustias mentales.

Aún inconformes con lo anteriormente resuelto, los Apelantes presentaron el recurso que nos ocupa, mediante el cual le imputaron al foro apelado la comisión de los siguientes errores:

Primer Error: Erró el TPI al no hacer determinación de hechos adicionales de evidencia admitida y la cual hubiese justificado enmendar la Sentencia en torno a ciertos aspectos, lo anterior según solicitado por la Apelante en su "Moción Solicitando Determinación de Hechos Adicionales y Solicitud de Reconsideración".

Segundo Error: Erró el TPI, al no reconsiderar la Sentencia según solicitado en la "Moción Solicitando Determinación de Hechos Adicionales y Solicitud de Reconsideración".

Tercer Error: Erró el TPI al valorar los daños y perjuicios de los coapelantes, Luz Mercedes Crespo Torres e Ismael Díaz González, ya que aun cuando fueron reconsiderados, la valorización otorgada por el TPI es muy inferior a la concedida por casuística análoga cuando se compara la magnitud de los daños sufridos por los Apelantes.

El 16 de enero de 2026, emitimos *Resolución* mediante la cual le concedimos a Mr. Special un plazo para presentar su alegato en oposición al recurso. Ha transcurrido en exceso del término otorgado sin que dicha parte presentara prórroga o cumpliera con lo ordenado.

En vista de lo anterior, resolvemos sin el beneficio de su comparecencia.

**II.**

**A.**[1]

Dispone el Artículo 1802 del Código Civil de 1930, en su parte pertinente, que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141. En cuanto a este precepto y su aplicación, se ha establecido que sólo procede la reparación de un daño cuando se demuestren los siguientes elementos indispensables: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa

---

[1] Somos conscientes de que mediante la Ley Núm. 55-2020, según enmendada, se adoptó el "Código Civil de 2020" y se derogó el Código Civil de 1930. Sin embargo, el Artículo 1815 del Código Civil de 2020 dispone que: "La responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. Si unos actos u omisiones ocurrieron antes de la vigencia de este Código y otros ocurrieron después, la responsabilidad se rige por la legislación anterior". 31 LPRA sec. 11720. Por tanto, para propósitos de adjudicación de la controversia que nos ocupa, utilizaremos las disposiciones del Código Civil derogado.

o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. Nieves Díaz v. González Massas, 178 DPR 820, 843 (2010).

En particular, el concepto de daños ha sido definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". López v. Porrata Doria, 169 DPR 135, 151 (2006). En esa misma línea doctrinal, se ha establecido que la culpa o negligencia es la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias. Nieves Díaz v. González Massas, *supra*, pág. 844; Rivera v. S.L.G. Díaz, 165 DPR 408, 421 (2005); Toro Aponte v. E.L.A., 142 DPR 464, 473 (1997); Ramos v. Carlo, 85 DPR 353, 358 (1962). Respecto a la relación causal, ésta es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico." Rivera v. S.L.G. Díaz, *supra*, pág. 422. Del daño culposo o negligente surge el deber de indemnizar que "presupone nexo causal entre el daño y el hecho que lo origina, pues sólo se han de indemnizar los daños que constituyen una consecuencia del hecho que obliga a la indemnización". López v. Porrata Doria, *supra*, pág. 151.

Esto último se refiere a la teoría de causalidad adecuada que rige en nuestro ordenamiento. De acuerdo a ella, no es causa toda condición sin la cual no se hubiera producido el daño, sino la que ordinariamente lo produce según la experiencia general. Montalvo v. Cruz, 144 DPR 748, 756 (1998). La jurisprudencia ha sostenido que un daño parece ser el resultado natural y probable de un acto negligente, si después del suceso y mirando retroactivamente dicho acto, tal daño aparece como la consecuencia razonable y ordinaria del acto. Torres Trumbull v. Pesquera, 97 DPR 338, 343 (1969); Estremera v. Inmobiliaria RAC, Inc., 109 DPR 852, 856 (1980). El principio de causalidad adecuada requiere que en todo caso de daños y perjuicios el demandante pruebe que la negligencia del demandado fue la que con mayor probabilidad causó el daño sufrido. Parrilla Báez v. Ranger

American of P.R., 133 DPR 263, 270 (1993). De esta forma, un demandado responde en daños si su negligencia por su acción u omisión es la causa próxima del daño, aun cuando no sea la única causa del daño. Velázquez v. Ponce, 113 DPR 39, 45 (1982). Por tanto, la cuestión se reduce a determinar si la ocurrencia del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo.

La prueba o evidencia circunstancial es intrínsecamente igual a la prueba o evidencia directa. Pueblo v. Pagán Santiago, 130 DPR 470, 479 (1992). Si un caso penal se puede probar mediante prueba circunstancial, cuanto más uno en la zona civil. E. L. Chiesa, Tratado de Derecho Probatorio, T. II, pág. 1238. No existe duda, pues, que, bajo nuestro derecho probatorio, la negligencia en los casos de daños es susceptible de ser probada, al igual que cualquier otro hecho en cualquier caso, mediante prueba circunstancial. Rodríguez v. Ponce Cement Corp., 98 DPR 201, 207-208 (1969).

A la luz de lo anterior, para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto culposo u omisión negligente y, además, el elemento de causalidad. Art. 1802 del Código Civil, *supra*. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso, de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. Castro Ortiz v. Mun. de Carolina, 134 DPR 783, 793 (1993).

**B.**

En lo referente a los casos de caídas en establecimientos comerciales, la jurisprudencia del Tribunal Supremo ha sido contundente al establecer que:

> No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinen el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro. Cotto Guadalupe v. C.M. Ins., 116 DPR 644, 650 (1985) (énfasis suplido).

No obstante lo anterior, el dueño del establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección". Íd. Por ello, es imprescindible que el promovente de la causa de acción pruebe que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para él". Íd. Así pues, la responsabilidad de los dueños de establecimientos comerciales se circunscribe a determinar la existencia de condiciones peligrosas y si las mismas eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos. Colón y otros v. K-Mart y otros, 154 DPR 510, 519 (2001).

Por consiguiente, se desprende que, bajo este tipo de situaciones, el propietario o dueño tiene el deber de mantener el área a la que tienen acceso sus clientes como un sitio seguro. Goose v. Hilton Hotels, 79 DPR 523, 528 (1956). Para poder prevalecer en su causa de acción, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, que esa condición fue la que con mayor probabilidad ocasionó el daño y que la misma era conocida por el demandado o que debió conocerla. Admor. F.S.E. v. Almacén Román Rosa, 151 DPR 711, 725 (2000); Colón y otros v. K-Mart y otros, *supra*, pág. 519.

Dicho deber de cuidado incluye tanto la obligación de anticipar el riesgo, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. En cuanto al deber de anticipar un riesgo, el Tribunal Supremo de Puerto Rico ha señalado lo siguiente:

[La regla de anticipar el riesgo no se limita a que el riesgo o las consecuencias exactas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinadas clases [...]. Ginés v. A.A.A., 86 DPR 518, 524 (1962).

El deber de previsión se extiende a aquel peligro que llevaría a una persona prudente y razonable a anticiparlo. Hernández v. La Capital, 81 DPR 1031, 1038 (1960).

[L]a negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Dicho de otro modo, "un daño no genera una causa de acción por negligencia, si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable." Herminio Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico*, Publicaciones JTS, 1989, pág. 185; Miranda v. ELA, 137 DPR 700, 1994; Ocasio Juarbe v. Eastern Airlines, 125 DPR 410 (1990); Jiménez v. Pelegrina Espinet, 112 DPR 700, 705-706; Salvá Matos v. A. Díaz Construction Corp., 95 DPR 902, 906-908, (1968).

Reiteradamente, la jurisprudencia ha reconocido la falta de previsión como base para la responsabilidad civil extracontractual. En Santiago Colón v. Supermercados Grande, 166 DPR 796 (2006), el Tribunal Supremo reiteró lo siguiente:

Habida cuenta de lo anterior, la norma en estos casos establece que si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer -- como haría un hombre prudente y razonable -- aquel grado de cuidado, diligencia, vigilancia, y precaución que las circunstancias le exigen y el daño causado se debió a dicho deber omitido cabrá imponer responsabilidad al causante.

Entre los deberes de actuar se encuentra el de cuidado. Este deber incluye, "tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase."

Para poder determinar lo que constituye un daño razonablemente previsible debemos acudir a la conocida figura del hombre prudente y razonable según definida en nuestra jurisprudencia. Elba A.B.M. v. U.P.R., *ante;* Ortiz v. Levitt & Sons, 101 DPR 290 (1973). Como resultado de lo anterior, en el pasado hemos resuelto que "el deber de previsión no se extiende a todo peligro inimaginable que concebiblemente pueda amenazar la seguridad sino aquél que llevaría a una persona prudente a anticiparlo. Íd., pág. 808.

**C.**

En armonía con lo anterior, en los casos de reclamación de daños y perjuicios, la indemnización requerida comprende el resarcimiento de los daños patrimoniales compuestos por el daño emergente y el lucro cesante,

así como los daños morales, consistentes de los sufrimientos físicos, las angustias mentales, la pérdida de compañía, el afecto y la incapacidad. Cintrón Adorno v. Gómez, 147 DPR 576, 587 (1999); *véase, además,* H. Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Vol. I, 2da ed., Pubs. J.T.S., Inc., 1986, págs. 427-428. La partida de sufrimientos y angustias mentales tiene el propósito de compensar el dolor, los sufrimientos físicos y las angustias mentales que padece una persona como consecuencia de un acto culposo o negligente. Cintrón Adorno v. Gómez, *supra*, pág. 597. La dificultad en la evaluación de los daños es mayor con respecto a la compensación por angustias y sufrimientos mentales, pues éstos son intangibles. Se incluyen bajo este concepto diversas categorías de daños, tales como daño emocional, ansiedad, pérdida de afecto y otros daños similares de naturaleza intangible. B. Dobbs, The Law of Torts, Vol. 2, West Group. St. Paul Minn., 2001, pág. 821; *véase además*, A. J. Amadeo Murga, El Valor de los Daños en la Responsabilidad Civil, Tomo I, Editorial Esmaco, 1997, págs. 220 y subsiguientes. No obstante lo anterior, una pena pasajera no es suficiente, toda vez que deben probarse sufrimientos y angustias morales profundas. Moa v. E.L.A., 100 DPR 573, 587 (1972).

Por otra parte, la labor de estimar y valuar daños no se reduce a simples cálculos matemáticos. Rodríguez *et al.* v. Hospital *et al.*, 186 DPR 889, 909 (2012). Se trata de un proceso complejo y desafiante, ya que no existen ecuaciones científicas de especificidad exacta que indiquen cómo se justiprecia el dolor y el sufrimiento humano. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, 179 DPR 774 (2010); Vázquez Figueroa v. E.L.A., 172 DPR 150, 154 (2007); Nieves Cruz v. U.P.R., 151 DPR 150, 169-170 (2000). Al evaluar los daños en un caso, el juzgador debe basarse estrictamente en la prueba presentada, procurando siempre que la indemnización no se transforme en una industria ni afecte la economía, por ello se ha dicho que el deber de los jueces tiene el propósito de conservar el sentido reparador y no punitivo que caracteriza a nuestro sistema jurídico. Agosto Vázquez v. F.W. Woolworth & Co., 143 DPR 76 (1997); Rivera v. Tiendas Pitusa, Inc.,

148 DPR 695, 700 (1999). Es menester destacar que el proceso de valoración y compensación de daños intangibles como las angustias, la tristeza y el dolor, siempre estará teñida de cierto matiz de especulación. **La meta debe ser, pues, llegar al punto intermedio, esto es, ni exageradamente alta ni irrazonablemente baja**. Riley v. Rodríguez Pacheco, 119 DPR 762 (1987).

Debido a la complejidad de esta gestión, existe una norma que limita la intervención de los foros apelativos fundada en criterios de estabilidad y deferencia a los tribunales de instancia. Según dicha norma, los foros revisores deben abstenerse de modificar la valoración de la prueba y la adjudicación de daños que un tribunal de instancia haya emitido, **salvo en aquellos casos en los que la suma concedida sea ridículamente baja o exageradamente alta.** Santiago Montañez v. Fresenius Medical, 195 DPR 476, 490 (2016); Rodríguez *et al.* v. Hospital *et al.*, *supra*, págs. 909-910; Albino v. Ángel Martínez, Inc., 171 DPR 457, 486-487 (2007). Ello responde a que los jueces de instancia se encuentran en mejor posición que los tribunales apelativos para estimar los daños, toda vez que éstos son los que tienen relación directa con la prueba presentada. Rodríguez *et al.* v. Hospital *et al*., *supra*, pág. 909; Blás v. Hosp. Guadalupe, 146 DPR 267, 339 (1998)*;* Rodríguez Cancel v. A.E.E., 116 DPR 443, 451 (1985). Asimismo, cabe enfatizar que resulta un principio básico en nuestro ordenamiento jurídico que, en la apreciación de la prueba desfilada ante el foro de instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 42.2 de Procedimiento Civil la cual, en lo pertinente, dispone que:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.32 LPRA Ap. V, R. 42.2

Esto es, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia.

Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos. Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, 153 DPR 280, 291 (2001). No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Así, en cuanto a la valoración o cuantificación del daño, dicho cometido corresponde, inicialmente, al juzgador de los hechos, quien debe ejercer su discreción de manera prudente, juiciosa y razonable, basándose exclusivamente en la prueba presentada y guiado por un sentido de justicia

y conciencia humana. S.L.G. v. F.W. Woolworth & Co., 143 DPR 76, 81 (1997); Concepción Guzmán v. A.F.F., 92 DPR 488 (1965). Recordemos que no existen dos casos completamente idénticos, ya que cada uno depende de sus circunstancias particulares al momento de valorizar los daños. Sucn. Mena Pamias *et al.* v. Meléndez *et al.*, 212 DPR 758, 770 (2023); Santiago Montañez v. Fresenius Medical, *supra*, pág. 784; Rodríguez *et al.* v. Hospital *et al.*, *supra*, pág. 943. El daño a ser compensado no puede subvalorarse meramente por el carácter especulativo que conlleve necesariamente el cómputo. Por tanto, los tribunales deben buscar una proporción razonable entre el daño causado y la indemnización concedida, de modo que la adjudicación sea razonablemente balanceada, es decir, ni extremadamente baja ni desproporcionadamente alta. Blás v. Hosp. Guadalupe*, supra*, pág. 339.

Así pues, en el ejercicio de dicha tarea, los tribunales deben examinar las cuantías otorgadas en casos similares resueltos anteriormente, ya que éstas sirven de punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el Tribunal de Primera Instancia. Santiago Montañez v. Fresenius Medical, *supra*, pág. 785-786. Igualmente, se debe ajustar la compensación otorgada al valor presente, tomando en consideración el índice de precios al consumidor en ambos períodos. Rodríguez *et al.* v. Hospital *et al.*, *supra*, pág. 910-911. **Además, los tribunales deben especificar qué casos tomaron como referencia y explicar cómo las cuantías concedidas se ajustan en esos precedentes, y se comparan y ajustan al caso ante su consideración**. Santiago Montañez v. Fresenius Medical, *supra*, pág. 493.

No obstante lo anterior, la decisión que se emita en un caso específico con relación a la valoración y estimación de daños no puede ser considerada como precedente obligatorio para otro caso, sino que sólo puede servir como guía o punto de inicio en casos parecidos. Toro Aponte v. E.L.A., 142 DPR 464, 478 (1997). Es indudable que la cuantificación de los daños siempre implica cierto grado de especulación; sin embargo, el juez debe guiarse por la razonabilidad y prudencia al estimar y valorar los daños

que ha sufrido una parte. Urrutia v. A.A.A., *supra*, págs. 647-648. **En este sentido, una compensación alineada con la otorgada en casos previos similares se considera razonable en principio y sólo será modificada si las circunstancias específicas del caso ante el Tribunal así lo requieren**. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, *supra,* pág. 791. Sin embargo, el Tribunal Supremo ha sido enfático en que la utilización de precedentes anteriores como referencia en la ardua tarea de cuantificar daños no implica que éstos sean obligatorios a la hora de realizar dicha encomienda. Sucn. Mena Pamias *et al.* v. Meléndez *et al.*, *supra*, pág. 771.

En aquellos casos en que se alegue y fundamente la defensa de negligencia comparada, "el tribunal está llamado a individualizar las indemnizaciones por daños, colocando el rigor económico en las partes conforme a la proporción de su descuido o negligencia". Colón Santos v. Coop. Seg. Mult. P.R., 173 DPR 170, 178 (2008) (citando a H.M. Brau del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan Pubs. JTS, 1986, Vol. I, pág. 410). De esta forma, el juzgador, luego de analizar todos los hechos y circunstancias del caso, tiene la tarea de "determinar el monto de la compensación y el porciento de responsabilidad que corresponde a cada parte, restando de la compensación total la fracción de responsabilidad correspondiente a la parte demandante". Íd. pág. 178.

**Ahora bien, quien solicite una modificación en la cuantía otorgada tiene la carga de probar su necesidad.** Meléndez Vega v. El Vocero de PR, 189 DPR 123, 203 (2013). Así pues, la parte que impugne la indemnización concedida por el foro de instancia debe demostrar la existencia de circunstancias que justifiquen dicho cambio. Simplemente alegar que la compensación es inadecuada no basta para que los foros apelativos la modifiquen. Por lo tanto, sólo cuando se acredite que la cuantificación de los daños es irrazonable, es que procede la revisión por los foros apelativos. Albino v. Ángel Martínez, Inc., *supra,* pag. 487.

Asimismo, el derecho a ser compensado no puede ser derrotado meramente porque el cálculo pueda tener cierto grado de especulación. Lo esencial es que la compensación otorgada se base en la prueba y cumpla

con la función reparadora que persigue nuestro ordenamiento. Rivera v. Tiendas Pitusa, Inc., *supra*, pag. 700. En línea con ello, nuestro máximo foro judicial ha enfatizado que, aunque la valoración de daños puede generar distintos criterios, esta tarea debe recaer, en la medida de los posible, en el juzgador de los hechos dentro de un análisis de razonabilidad. Meléndez Vega v. El Vocero de PR, *supra*, pag. 204.   De no existir algún error manifiesto, parcialidad o prejuicio en tal apreciación, no corresponde nuestra intervención. Íd.

**D.**

Es norma conocida en nuestro ordenamiento jurídico que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co., 209 DPR 759, 779 (2022). Al respecto, la Regla 42.2 de las Reglas de Procedimiento Civil dispone que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". 32 LPRA Ap. V, R. 42.2.

Es decir, un tribunal apelativo no tiene facultad de sustituir por sus propias apreciaciones las determinaciones del foro de instancia. Serrano v. Auxilio Mutuo, 171 DPR 717, 741 (2007). La razón jurídica detrás de esta normativa se fundamenta en la apreciación que hace el adjudicador de los hechos de la prueba testifical, porque al ser una tarea llena de elementos subjetivos, es él quien está en mejor posición para aquilatarla. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016). El Tribunal de Primera Instancia es el foro que tiene la oportunidad de escuchar el testimonio y apreciar el comportamiento de los testigos Peña Rivera v. Pacheco Caraballo, 213 DPR 1009, 1024 (2024); Dávila Nieves v. Meléndez Marín, 187 DPR 750, 771 (2013). Basándose en ello, adjudica la credibilidad que le merecen los testimonios. Así, la declaración directa de un sólo testigo, de

ser creída por el juzgador de hechos, es prueba suficiente de cualquier hecho. SLG Rivera Carrasquillo v. AAA, 177 DPR 345, 357 (2009).

A tenor con lo anterior, se le concede respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos, dado que el foro apelativo cuenta solamente con "récords mudos e inexpresivos". Trinidad v. Chade, *supra*, pág. 291. No obstante, la norma de deferencia judicial tiene límites y no supone una inmunidad absoluta frente a la función de los tribunales revisores. El Tribunal Supremo aclaró en Dávila Nieves v. Meléndez Marín, *supra*, por primera vez, qué constituye que un juez adjudique con pasión, prejuicio o parcialidad, o que su determinación sea un error manifiesto. Allí se concluyó que un juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". Íd., pág. 782.

Por otro lado, se consideran claramente erróneas las conclusiones del foro revisado si de un análisis de la totalidad de la evidencia, el foro apelativo queda convencido de que "se cometió un error, [...] [porque] las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". Íd., pág. 772. En otras palabras, incurre en un error manifiesto cuando "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". Pueblo v. Toro Martínez, 200 DPR 834, 859 (2018).

Por lo tanto, la facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que, a la luz de la prueba admitida, "no exista base suficiente que apoye su determinación". Gómez Márquez *et al.* v. El Oriental, 203 DPR 783, 794 (2020). Como es conocido, las diferencias de criterio jurídico no cumplen con el referido estándar de revisión. Íd.

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia Enmendada* del TPI, mediante la cual se declaró "Ha Lugar" la "**Demanda**" que interpusieron.

Los señalamientos de error esgrimidos se encuentran íntimamente relacionados, por lo que se abordarán de manera conjunta en la discusión. En síntesis, los Apelantes sostienen que el TPI erró al: (1) no realizar determinaciones de hechos adicionales sobre evidencia admitida; (2) no reconsiderar la *Sentencia*, según solicitado en la "**Moción Solicitando Determinación de Hechos Adicionales y Solicitud de Reconsideración**" y (3) valorar los daños y perjuicios sufridos, ya que dicha valorización es muy inferior a la concedida por casuística análoga. Veamos.

Del expediente ante nuestra consideración se desprende que el 5 de junio de 2025 los Apelantes presentaron una "**Demanda**" sobre daños y perjuicios contra Mr. Special y Chubb en relación con una caída que sufrió la señora Crespo Torres en dicho establecimiento. En detalle, alegaron que, mientras la señora Crespo Torres caminaba empujado su carrito de compras, sufrió un resbalón debido a que el piso se encontraba húmedo. Argumentaron, además que, a raíz de dicho accidente, tuvo que ser sometida a varios procedimientos quirúrgicos, los cuales ocasionaron un significativo menoscabo en su calidad de vida.

Tras un trámite procesal extenso, incluyendo la celebración del juicio en su fondo, el TPI dictó *Sentencia* declarando "Ha Lugar" la "**Demanda**" presentada por los Apelantes. Así pues, ordenó el pago solidario de treinta y siete mil quinientos ($37,500.00) a favor de la señora Crespo Torres por daños directos y/o morales y dos mil ochocientos dólares con veintiún centavos ($2,808.21) al señor Díaz González por las angustias sufridas. Insatisfechos con esta decisión, los Apelantes presentaron una "**Moción Solicitando Determinación de Hechos Adicionales y Reconsideración**", mediante la cual solicitaron la reconsideración de ciertas determinaciones de hechos, así como la credibilidad atribuida a la versión ofrecida por el gerente de Mr. Special durante la celebración del juicio. Además,

peticionaron la revisión de la cuantía adjudicada por entender que la misma es extremadamente baja. En concordancia con lo anterior, el 21 de octubre de 2025, el TPI emitió una *Sentencia Enmendada* a los fines de aumentar la compensación de la señora Crespo Torres a cincuenta mil dólares ($50,000.00).

Conforme adelantáramos en los acápites anteriores, el Código Civil derogado disponía que quien mediante acción u omisión cause daño a otro, cuando intervenga culpa o negligencia está obligado a reparar dicho daño. 31 LPRA sec. 5141. En consecuencia, resulta imprescindible que, en toda controversia sobre daños y perjuicios extracontractuales, el promovente demuestre que la negligencia del demandado fue la causa más probable del perjuicio sufrido. Parrilla Báez v. Ranger American of P.R., *supra*, pág. 270. Ahora bien, es norma reiterada que cuando la imprudencia del reclamante abona a la ocurrencia de los daños, es menester determinar el porcentaje de su participación en la causalidad reclamada. No obstante, en la realización de dicha tarea, el juzgador de instancia está en la obligación de considerar todos los hechos y circunstancias que mediaron en el caso, y particularmente si ha habido una causa predominante. Quiñones López v. Manzano Pozas, *supra*, pág. 176. Así pues, en el caso específico de accidentes en establecimientos comerciales, nuestro Tribunal Supremo ha determinado que es su responsabilidad mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinen el mismo no sufran ningún daño. Con ello, le corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro. Cotto Guadalupe v. C.M. Ins., *supra*, pág. 650.

Por otro lado, cabe destacar que la tarea de estimar y valorizar daños resulta compleja, ya que no existen fórmulas científicas exactas para cuantificar el dolor y el sufrimiento humano. Herrera, Rivera v. S.L.G. Ramírez-Vicéns, *supra*, pág. 774. Por ello, la valoración y compensación de daños intangibles, tales como la angustia, la tristeza y el dolor, está siempre teñida por un grado de especulación. Íd.

Asimismo, en lo que respecta a la revisión de las determinaciones del TPI, los foros apelativos debemos abstenernos de modificar la valoración de la prueba y la adjudicación de daños realizada por el foro primario, salvo cuando la suma asignada resulte absurdamente baja o exageradamente alta. Santiago Montañez v. Fresenius Medical, *supra*, pág. 490. Ello responde a que los jueces de instancia se encuentran en mejor posición que los tribunales apelativos para evaluar los daños, ya que son quienes tienen contacto directo con la prueba presentada. Rodríguez et al. v. Hospital et al., *supra*, pág. 909. Por lo tanto, sólo procede la revisión por parte de los foros apelativos cuando se acredite que la cuantificación de los daños es irrazonable. Albino v. Ángel Martínez, Inc., *supra*, pág. 487. Ahora bien, para ello es necesario que quien recurra ante los tribunales apelativos tiene el peso de demostrar la necesidad de que se efectúe una modificación a la cuantía otorgada por el juzgador de instancia. Meléndez Vega v. El Vocero de PR, *supra*, pág. 203.

Tras un análisis minucioso y comprensivo del expediente ante nuestra consideración, incluyendo la transcripción de la prueba oral (TPO) y la jurisprudencia utilizada para valorar los daños en el presente caso, hemos arribado a la conclusión de que la indemnización concedida por el TPI respecto a los daños físicos y angustias mentales sufridas por la señora Crespo Torres no se ajusta a las operaciones matemáticas que establece la casuística aplicable, particularmente a los parámetros establecidos en Santiago Montañez v. Fresenius Medical, *supra.* La suma adjudicada resulta incorrecta si se compara con las cuantías reconocidas en precedentes de naturaleza análoga. **Lo anterior obedece a que el Tribunal empleó valores adquisitivos del dólar incorrectos al momento de efectuar sus cálculos**. **Advertimos que el TPI utilizó como referencia casos adecuados, simplemente, nuestra conclusión está atada a las operaciones matemáticas efectuadas por el juzgador**. Sin embargo, estimamos que el foro a *quo* no se equivocó al concluir que el porciento de negligencia que aportaron los Apelantes en la ocurrencia de los daños fue de un 50%. Nos explicamos.

De la TPO se desprende que la señora Crespo Torres sufrió una caída al impactar su rodilla izquierda contra el piso mojado del Supermercado Mr. Special. A raíz de dicho incidente, la señora Crespo Torres ha experimentado dolor persistente y limitaciones en su calidad de vida. Asimismo, surge de la TPO que esta debió someterse a múltiples evaluaciones y estudios médicos, entre ellos una cirugía artroscópica, un reemplazo total de rodilla y varias sesiones de terapia física y ocupacional. Además, se determinó que presenta un diecisiete por ciento (17%) de impedimento de cuerpo completo, con poca probabilidad de mejoría.

Basado en lo anterior, el foro apelado concedió la suma de cien mil dólares ($100,000.00) por los daños físicos sufridos y angustias mentales, menos el 50% de la negligencia desplegada por ésta en la ocurrencia de los daños reclamados. Para fundamentar dicha cuantía, el Tribunal recurrió a varias determinaciones judiciales, las cuales detallamos a continuación. En este sentido, se hace necesario aclarar que el dictamen apelado en el presente recurso fue una *Sentencia Enmendada* que, conforme a nuestro estado de derecho, surte efectos jurídicos desde el momento en que se emite; distinto a cuando se enmienda una determinación final en un caso de manera *nunc pro tunc*.

En Colón y otros v. K-Mart y otros, *supra*, la Sra. Janet González Colón sufrió lesiones cuando una caja de mercancía golpeó su hombro izquierdo y un carrito de compras impactó su rodilla y muslos, dejándola inconsciente en el suelo. Meses después, continuaba con dolor intenso e hinchazón en la rodilla izquierda. Los peritos concluyeron que su condición era crónica e incapacitante y que derivaba del trauma sufrido. Se determinó que presentaba un diez por ciento (10%) de incapacidad permanente en la pierna izquierda, equivalente a un cuatro por ciento (4%) de afectación general. Los daños reclamados incluyeron la pérdida de sus empleos, la disminución de ingresos y una reducción significativa en sus actividades cotidianas. En vista de lo anterior, el Tribunal concedió una indemnización de sesenta mil dólares ($60,000.00).

En el referido caso, resuelto **el 26 de junio de 2001**, el valor adquisitivo del dólar era de $0.51. Para realizar el ajuste correspondiente, la fórmula correcta consiste en multiplicar la compensación concedida, ($60,000.00) por dicho valor y luego dividir el resultado entre $0.72, que es el valor del dólar al momento en que se dictó la *Sentencia Enmendada* apelada, esto es, en octubre de 2025. Aplicado correctamente este método, la cuantía ajustada asciende a la suma de $42,500.00.

Conviene destacar que el foro *a quo*, al efectuar su cálculo, recurre a un valor del dólar incorrecto, utilizando $1.18 en lugar de $0.51. Dicha sustitución altera sustancialmente el resultado y genera una cifra desproporcionadamente alta, a saber, $96,986.30. De este modo, el error en el índice utilizado provoca que el ajuste inflacionario no refleje la equivalencia real entre ambas épocas, afectando de forma significativa la cuantía finalmente adjudicada a la señora Crespo Torres.

En el caso <u>Burgos Torres v. Municipio de Cayey</u>, caso núm. KLAN202400417 la perjudicada sufrió una caída mientras caminaba por una acera del Municipio de Cayey. Como consecuencia, recibió atención de emergencia y fue diagnosticada con contusiones en las rodillas y manos, así como dolor cervical, sin evidencia de fracturas. Posteriormente, y por recomendación del ortopeda, se sometió a una artroscopía de rodilla para reemplazo de ligamento, recibió diecinueve sesiones de terapia física y desarrolló un ocho por ciento (8%) de impedimento total.

Los daños reclamados se fundamentaron en su dificultad para doblar la rodilla, el dolor severo, el uso de muletas, la pérdida de balance y la necesidad de asistencia para realizar las tareas del hogar. El TPI le otorgó una indemnización total de setenta y cuatro mil seiscientos treinta y un dólares con setenta y seis centavos ($74,631.76), valoración que fue confirmada por un panel hermano de este Tribunal de Apelaciones en su *Sentencia* del 24 de junio de 2024.

En el mencionado caso, el TPI concedió una indemnización ascendente a $74,631.76. Para ajustar esta suma al valor presente, procede comparar el valor adquisitivo del dólar en junio de 2024 ($0.73) con el valor

del dólar vigente al momento de la *Sentencia Enmendada*, fijado en $0.72. Conforme a la fórmula correspondiente, que requiere multiplicar la cantidad concedida por el valor del dólar en la fecha original y dividir el resultado entre el valor actual, el monto de $74,631.76 ajustado asciende a $75,668.31.

No obstante lo anterior, el foro primario obtuvo nuevamente la cifra de $74,631.76 porque utilizó el valor del dólar aplicable a la fecha de la *Sentencia* original, y no el valor correspondiente a la *Sentencia Enmendada*. Como resultado, el cálculo no reflejó el ajuste inflacionario correcto entre ambas fechas.

En Pagán Álvarez v. Integrand Assurance Company, caso núm. KLAN201900526, la perjudicada sufrió una caída al resbalar en un piso mojado en el área de frutas del supermercado Supermax, donde no había rótulos de advertencia. El foro de instancia atribuyó la totalidad de la responsabilidad al supermercado, sin adjudicar negligencia comparada a la perjudicada. Como consecuencia del accidente, presentó contusiones en la rodilla derecha, hinchazón, dolor, limitación severa de movimiento, desgarro de menisco y otras lesiones menores, lo que requirió tratamiento de emergencia, evaluaciones ortopédicas y estudios radiográficos y de MRI.

La perjudicada fue sometida a una artroscopía, se le diagnosticó ruptura de menisco, recibió diecisiete (17) sesiones de terapia física en la rodilla y la espalda, y el perito determinó un cuatro por ciento (4%) de impedimento total. Aunque tenía 55 años y padecimientos previos, para la fecha del accidente se encontraba recuperada. Los daños reclamados se basaron en sus dificultades para caminar, subir escaleras, bailar y realizar labores del hogar sin dolor. El TPI otorgó la suma de sesenta y tres mil quinientos dólares ($63,500.00) por los daños físicos y angustias mentales sufridos, cuantía que fue confirmada por un panel hermano de este Tribunal mediante *Sentencia* del 26 de marzo de 2021.

En dicho caso, el foro primario en dicho caso concedió la suma de $63,500.00, la cual, al ajustarse al valor presente utilizando ($0.72) como valor del dólar y compararlo con el valor de ($0.83) vigente en marzo de 2021, asciende a $73,201.39. No obstante lo anterior, en el presente caso,

al realizar el cálculo, el TPI obtuvo la cantidad de $72,198.63, ello debido a que aplicó de forma incorrecta el índice del valor del dólar al presente.

En <u>Soto Santiago v. Supermercado Mr. Special</u>, *supra*, la perjudicada, de sesenta y tres (63) años, resbaló y cayó al impactar su rodilla contra el piso debido a la presencia de una sustancia espesa derramada en el área frente a las neveras de mantecados y helados. Aunque no tenía condiciones previas en la rodilla derecha, sí contaba con historial de osteoporosis y fibromialgia. Como resultado del accidente, experimentó dolor intenso en la rodilla y en la espalda baja, recibió veintinueve sesiones de terapia física y se le determinó un dos por ciento (2%) de impedimento de sus funciones fisiológicas generales. Al valorar los daños, el foro primario determinó que la perjudicada tenía un diez por ciento (10%) de negligencia comparada por no percatarse del derrame. La compensación inicial ascendía a cuarenta y cuatro mil quinientos dólares ($44,500.00); sin embargo, al aplicarle la reducción correspondiente, la indemnización quedó fijada en cuarenta mil dólares ($40,000.00). Un panel hermano de este Tribunal de Apelaciones confirmó dicha valoración mediante *Sentencia* del 14 de diciembre de 2021.

En dicho caso, el TPI otorgó la suma de $44,500.00, la cual, al ajustarse al valor presente utilizando ($0.72) en comparación con el valor del dólar en diciembre de 2021 ($0.81), asciende a $50,062.50. Es menester destacar que, al efectuar el cálculo, el TPI obtuvo la cantidad de $44,383.56, toda vez que utilizó la cuantía ya reducida por la negligencia comparada, en vez de utilizar la cuantía real en que se estimaron los daños antes de aplicar el porcentaje de negligencia comparada que se le atribuyó a la parte promovente del caso. Además, recurrió nuevamente al valor del dólar incorrecto, correspondiente a la *Sentencia* original.

En vista de lo anteriormente expuesto, y a partir de los cálculos realizados conforme a la jurisprudencia aplicable, concluimos que las compensaciones otorgadas en los casos examinados, una vez ajustadas al valor presente, oscilan entre $42,500.00 y $75,668.31. **A la luz de ese marco comparativo, el TPI erró al valorar los daños de la señora Crespo**

**Torres, pues utilizó índices del valor del dólar incorrectos, a saber, aquél correspondiente a la fecha de la *Sentencia* original de 30 de junio de 2025 ($0.73), en vez del aplicable a la fecha de la *Sentencia Enmendada* apelada de 21 de octubre de 2025 ($0.72). Igualmente, se equivocó al aplicarle el índice del valor del dólar de $1.18 en el caso de Colón y otros v. K-Mart y otros, *supra*, en vez del que correspondía el cual ascendía a $0.51. Ello provocó que las cuantías obtenidas fluctuaran entre $44,383.56 y $96,986.39, montos que se apartan de lo adjudicado en casos análogos**.

En concordancia con lo anterior, concluimos que la suma de $100,000.00 no responde a la realidad matemática del momento en que se dictó la *Sentencia Enmendada*, sino que representa la extensión de un error matemático al utilizar el índice de valor del dólar erróneo. Por consiguiente, estimamos adecuado ajustar dicha cuantía a la cantidad de $80,000.00, **tomando en cuenta la compensación más alta reconocida en casos similares y las particularidades del presente asunto. Nótese que la reducción que hoy aplicamos no obedece a un fundamento en el vacío, sino más bien, a que el TPI utilizó el índice del valor del dólar equivocado, lo cual, matemáticamente resulta en una diferencia en el cálculo comparativo final que se efectúa a la hora de valor los daños**. Así pues, aplicado el cincuenta por ciento (50%) atribuible a la negligencia incurrida por la señora Crespo Torres, la suma final asciende a $40,000.00.

Por último, es menester destacar que la inobservancia de la señora Crespo Torres respecto a las condiciones que la rodeaban constituyó un elemento determinante en la causa próxima de los daños. La prueba presentada demostró, además, que pudo haber adoptado medidas preventivas al transitar por el área, particularmente por tratarse de una sección donde se exhibían productos de agua potable y que, por su naturaleza, es propensa a derrames. A tono con ello, coincidimos con el foro apelado en la adjudicación del porcentaje de negligencia atribuible a los Apelantes, determinación que entendemos se encuentra debidamente sustentada en la prueba desfilada durante el juicio.

Resuelto lo anterior, pasemos a calcular las angustias mentales del señor Díaz González. Para ello, recurriremos a analizar el caso utilizado por el TPI y resuelto por un panel hermano de este Tribunal de Apelaciones, Cruz Cruz v. Always Me, caso núm. KLAN202000035.

La prueba demostró que el señor Díaz González experimentó un impacto significativo en su vida cotidiana tras el accidente. Perdió la asistencia que la señora Crespo Torres le brindaba en las labores de la finca, lo cual, según su testimonio, le afectó emocionalmente al incrementarse sus responsabilidades tanto en el hogar como en el cuidado de su pareja, ya que no podía salir ni dejarla sola. Indicó, además, que debía tomar medicación para controlar los nervios. No obstante, reconoció que, como compañero de la señora Crespo Torres, no le resultaba oneroso realizar tareas como barrer o recoger la cama, y que atenderla no le agobiaba porque la quiere.

En Cruz Cruz v. Always Me, *supra*, un panel hermano de este Tribunal redujo a cinco mil dólares ($5,000.00) la indemnización concedida a la pareja de la perjudicada por sus angustias y sufrimientos mentales. Para así resolver, este Tribunal tomó en cuenta que la pareja no alegó afectaciones a compromisos personales, no trabajaba para ese momento, permanecía usualmente junto a la perjudicada, la acompañaba a sus citas médicas y colaboraba con las tareas cotidianas del hogar. El panel hermano entendió que estas labores constituyen un deber natural dentro de la vida en pareja y no una carga que, por sí sola, configure un daño compensable, aunque reconoció la ansiedad y preocupación genuinas ocasionadas por el accidente y el proceso de recuperación.

En dicho caso, al esposo de la perjudicada se le adjudicó la suma de $5,000.00. Al ajustar dicha cantidad al valor presente del dólar ($0.72) en comparación con su valor en julio de 2021 ($0.82), se obtiene un equivalente de $5,694.44. Al aplicar la reducción correspondiente al 50% de negligencia atribuida, la suma resultante es de $2,847.22.

Por su parte, el foro *a quo,* al realizar su cálculo obtuvo la cifra de $5,616.43 y, tras descontar el 50% por la negligencia imputada, concedió

$2,808.21. Ello obedeció a que se basó en el valor del dólar vigente al momento de emitirse la primera *Sentencia* y no en el que correspondía a la *Sentencia Enmendada.*

No obstante esta discrepancia técnica, la cuantía concedida por el foro de instancia no refleja desproporción alguna, pues no resulta ni excesiva ni insuficiente. Por el contrario, responde a una evaluación cuidadosa, objetiva y razonable de los daños acreditados en el expediente. Tal determinación está sustentada en la prueba desfilada en el juicio y en la normativa jurisprudencial que reconoce que, aunque la valoración de daños es un ejercicio con cierto grado de estimación, constituye un elemento indispensable para cumplir con la función reparadora de nuestro ordenamiento.

De igual forma, resulta necesario destacar que el TPI apoyó su determinación en un caso con circunstancias fácticas análogas, lo que permitió adoptar un marco de referencia adecuado y coherente para la valoración de los daños en este caso. En consecuencia, aun cuando se utilizó un índice de valor del dólar incorrecto, la suma finalmente concedida no amerita alteración.

Procede, por consiguiente, modificar la *Sentencia Enmendada* apelada, únicamente a los fines de disminuir la cantidad otorgada a la señora Crespo Torres.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *modifica* la *Sentencia Enmendada* únicamente para otorgar la cantidad de $40,000.00 por los daños sufridos por la señora Crespo Torres, luego de descontado el porcentaje de negligencia comparada del 50% atribuido a ésta, y así *modificada*, se *confirma*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones